TIMOTHY COURCHAINE
United States Attorney
District of Arizona
Jonathan B. Granoff
David P. Petermann
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Jonathan.Granoff@usdoj.gov
David.Petermann@usdoj.gov
Attorneys for Plaintiff

FILED
2026 AUG 12 PM 3:37
CLERK US DISTRICT COURT
DISTRICT OF ARIZONA

**CR26-04213 TUC-RM(LLP)**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Rodney Rosenstein,<br>Defendant. | INDICTMENT<br>Violations:<br>18 U.S.C. § 1349<br>Conspiracy to Commit Bank Fraud<br>(Count 1-2)<br><br>18 U.S.C. § 371<br>Conspiracy to Commit False Statement to Influence a Mortgage Lending Business<br>(Count 3)<br><br>18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A); 28 U.S.C. § 2461(c)<br>(Forfeiture Allegation)<br><br>**(UNDER SEAL)** |

THE GRAND JURY CHARGES:

**INTRODUCTION**

At all relevant times in this indictment, the following facts are alleged:

1. The defendant, Rodney Rosenstein ("ROSENSTEIN"), was a resident of California. Rosenstein owned and controlled the following companies: Red Ocean Inc.; Ocean Structures LP; 9919 Canoga LLC; 2450 Colorado Blvd. LLC; Helpful Housing; Storage Depot Inc.; Pacific Coast Alarms Inc.; and Ocean Structure Inc.

2. ROSENSTEIN also owned and controlled the following additional companies: 4098 E. 29th Street LLC; 4141 E. 29th Street LLC; 314 E. Benson LLC; and 1025 E. Benson LLC. Helpful Housing is the principal member for each of these entities. ROSENSTEIN incorporated and is listed as the CEO of Helpful Housing. Each of these entities was formed in Arizona.

3. Pacific Western Bank (now known as Banc of California, N.A); Pacific Enterprise Bank (now known as United Business Bank); Zions Bancorporation dba California Bank & Trust; Zions Bancorporation dba Zions First National Bank; Farmers & Merchants Bank of Long Beach; and Bank of Southern California (now known as California Bank of Commerce) were all financial institutions insured by the Federal Deposit Insurance Corporation (FDIC).

4. These "financial institutions" were all Small Business Administration (SBA) participating lenders for the Paycheck Protection Program described below.

5. The SBA is an agency of the United States. The purpose of the SBA is to help and support small businesses in the United States.

6. Pacific Premier Bank (now known as Columbia Bank), M&T Realty Capital Corporation, and ReadyCap Commercial LLC were financial institutions and mortgage lending businesses.

**The Paycheck Protection Program**

7. In March 2020, the Coronavirus Aid Relief, and Economic Security ("CARES") Act was enacted and provided emergency financial assistance to Americans suffering economic harm because of the COVID-19 pandemic. The CARES Act authorized the SBA to create the Paycheck Protection Program (PPP), which permitted the SBA to use billions of dollars in United States taxpayer funds to provide guaranteed loans to small businesses for job retention and certain other expenses. PPP loans were 100% guaranteed by the SBA, and the full principal amount of the loans qualified for loan forgiveness if the terms of the program were satisfied.

8. To provide relief to America's small businesses expeditiously, the CARES Act streamlined the loan process and allowed SBA participating lenders (the financial institutions) to rely on certifications of the borrowers to determine eligibility for the loans. The Act also allowed these financial institutions to rely on specified documents provided by borrowers to determine the qualifying loan amount and eligibility for loan forgiveness. Some of the documents the lenders relied on for their loan approval process were United States tax forms to include Forms 941 (quarterly payroll tax forms) and W-2's. These documents were material to the lending decisions and provided by the loan applicant as proof of the monthly payroll expenses to support the loan amounts issued by the participating lenders.

9. To obtain approval for the loan, the loan applicant was required to state, among other things, their average monthly payroll expenses. These figures were used to calculate the amount of money the small business was eligible to receive. Under the Program, businesses were generally eligible for loans 2.5 times that of their average monthly payroll. The loan funding amount under the SBA program therefore generally increased depending on the stated monthly payroll in the loan application.

10. In the application for PPP loan ("SBA Form 2483"), the applicant certified that "the information provided in all supporting documents and forms [was] true and accurate in all material respects." The application further informed the applicant that making a false statement to obtain a guaranteed loan from the SBA was punishable under various federal criminal statutes.

**The PPP Bank Fraud Scheme and Artifice to Defraud**

11. It was part of the scheme and artifice to defraud that ROSENSTEIN and his co-conspirators, with the intent to defraud, knowingly and intentionally executed and attempted execute a scheme to defraud various federally insured financial institutions identified in paragraph 3 of the indictment. ROSENSTEIN became a member of the conspiracy knowing its object was to commit bank fraud and intended to help accomplish it. Between approximately May 2020 through April 2021, ROSENSTEIN, through his

companies identified in paragraph 1, fraudulently obtained a total of approximately $2,904,091 in 15 PPP loans from these financial institutions. As part of the loan application process, Co-conspirator A created numerous fake and fraudulent IRS Forms 941 and W-2's in the names of ROSENSTEIN's business entities. These phony documents falsely conveyed that these tax documents had been properly filed with the IRS when that had not occurred. The fake W-2 forms falsely represented that various employees had been paid wages and that they had federal income and payroll tax withheld from these wages. However, none of these W-2 forms were ever issued or filed with the IRS and the listed individuals were never paid the wages reflected on the forms. Additionally, no such income was ever actually withheld from the phony wages. These tax documents contained personal identifying information of fake individuals purporting to be employees who either did not exist or individuals who did exist but never worked for ROSENSTEIN or his companies. The social security numbers listed on these forms were either not valid or falsely attributed to an individual listed on the tax form. After creating these fake tax documents, Co-conspirator A would transfer them to ROSENSTEIN. In certain cases, the transfer of fake documents was directly from Co-conspirator A to ROSENSTEIN. However, in other cases, Co-conspirator A forwarded the fake documents to Co-conspirator B, who would then transfer the fake documents to ROSENSTEIN.[1] ROSENSTEIN and his fellow co-conspirators knowingly and intentionally caused these fake and phony tax documents to be submitted for each fraudulently obtained PPP loan. These fake documents and their filing status with the IRS were material and capable of influencing the lenders' decisions to issue PPP loans.

12. As part of the PPP loan program, loan applicants were eligible for loan forgiveness assuming they could demonstrate that they complied with the parameters of the PPP loan program. In furtherance of the bank fraud scheme, between approximately June 2021 through August 2022, ROSENSTEIN submitted or caused to be submitted

---

[1] Co-conspirators "A" and "B" are unindicted co-conspirators.

fraudulent and phony payroll tax documents to the financial institutions to unlawfully obtain "loan forgiveness." These documents were also created by Co-conspirator A and provided to ROSENSTEIN through Co-conspirator B. In his "loan forgiveness applications," ROSENSTEIN further intentionally caused documents to be submitted that contained materially false representations that he properly used PPP loan funds towards payroll and other qualified expenses, when in fact ROSENSTEIN had used portions of fraudulent PPP loan funds to purchase new properties or for other unauthorized expenses.

**The Phony "Rent Roll" Bank Fraud Scheme and Artifice to Defraud**

13. It was part of the scheme and artifice to defraud that defendant and his co-conspirators, (Co-conspirators B and C and at least one other unnamed Co-conspirator)[2] with the intent to defraud, knowingly and intentionally executed and attempted execute a scheme to defraud various financial institutions and mortgage lending businesses in a separate bank fraud scheme as follows. ROSENSTEIN became a member of the conspiracy knowing its object was to commit bank fraud and intended to help accomplish it.

**4098 E. 29th Street, Tucson AZ**

14. On or about June 30, 2023, ROSENSTEIN, through his company 4098 E. 29th Street LLC obtained an additional approximately $11.4 million dollar fraudulent "cash back" refinance loan relating to the above property from M&T Realty Capital Corporation, a financial institution and mortgage lending business. From this total, ROSENSTEIN received approximately $3.5 million dollars after the balance of the previous mortgage had been paid. ROSENSTEIN and his co-conspirators caused to be submitted materially false representations concerning the property's rental occupancy. The fake rent roll documents falsely represented the rental occupancy rates for the property at 100% occupied between March through May 2023. In reality, the property during this time-period was 80% occupied.

---

[2] Co-conspirator "C" is also an unindicted Co-conspirator.

**4141 E. 29th Street, Tucson, AZ**

15. On or about March 18, 2022, ROSENSTEIN, through his company 4141 E. 29th Street LLC, obtained an additional approximately $6.2 million "cash back" refinance loan from ReadyCap Commercial LLC, a financial institution and mortgage lending business. From this total, ROSENSTEIN received approximately $2.1 million dollars after the balance of the previous mortgage had been paid. As part of the loan approval process, the co-conspirators, to include ROSENSTEIN, caused to be submitted materially false representations to include falsely overstating the "rent roll" occupancy rate for the property as 100 percent and falsely overstating gross monthly operating income. In reality, during the time-frame submitted for the loan application, the occupancy rate for the property was 56% and 61%.

**314 E. Benson Highway, Tucson, AZ**

16. On or about June 30, 2022, ROSENSTEIN, through his company 314 E. Benson LLC, obtained an approximately $2.5 million "cash back" refinance loan from ReadyCap Commercial LLC, a financial institution and mortgage lending business. From this total, ROSENSTEIN received approximately $1.3 million dollars after the balance of the previous mortgage had been paid. As part of the loan approval process, the co-conspirators, to include ROSENSTEIN, caused to be submitted materially false representations to include falsely overstating the "rent roll" occupancy rate as 100 percent and falsely overstating the gross monthly operating income. In reality, during the time-frame submitted for the loan application, the occupancy rate was 76%.

**1025 E. Benson Highway, Tucson, AZ**

17. On or about January 25, 2023, ROSENSTEIN, through his company 1025 E. Benson LLC, obtained an approximately $7.1 million "cash back" refinance loan from ReadyCap Commercial LLC, a financial institution and mortgage lending business. From this total, ROSENSTEIN received approximately $1.9 million dollars after the balance of the previous mortgage had been paid. As part of the loan approval process, the co-conspirators, to include ROSENSTEIN, caused to be submitted materially false

representations to include falsely overstating the "rent roll" occupancy rate as 100 percent and falsely overstating the gross monthly operating income. In reality, the occupancy rate for the property was between 59% and 66% during the time-period submitted for the loan application.

## Additional False Statements to Influence Financial Institutions and Mortgage Lending Businesses

18. On or about September 16, 2021, ROSENSTEIN, through his company **4098 E. 29th Street LLC**, obtained an approximately $8 million dollar "cash back" refinance loan from Pacific Premier Bank (now known as Columbia Bank), a financial institution and mortgage lending business. From this total, ROSENSTEIN, through his company, received approximately $2.2 million dollars after the balance of the previous mortgage had been paid. To obtain the loan, the Co-conspirators provided fake "rent rolls" to demonstrate that the property had a rental occupancy rate of 100% when the property truthfully did not have a full rental occupancy. Co-conspirators further falsely overstated gross operating income to inflate the profitability of the property. These false representations were provided to the lender to obtain the loan.

19. Relating to each commercial loan outlined in paragraphs 13-18 of the indictment, Co-conspirator B, on behalf of ROSENSTEIN, created fake capital expenditure lists for each loan application. The capital expenditure lists artificially inflated the true and accurate capital improvement expenses for each property. These false statements were submitted to the mortgage lending businesses in furtherance of the conspiracy to influence the lenders' funding decision.

20. Relating to the commercial loans outlined in paragraphs 13-18 of the indictment, Co-conspirator B, on behalf ROSENSTEIN, provided additional false representations concerning the rental occupancy rates after the loans had been approved. Co-conspirators informed bank inspectors (after the issuance of the loans) that the

property had an occupancy rate close to 100 percent when in fact the occupancy rate was significantly below 100 percent.

21. Relating to the commercial loan for 1025 E. Benson Highway referenced in paragraph 17 of the indictment, after the loan had been issued, the Co-conspirators continued to provide the lender's servicer fake "rent roll" documents and other false representations about the rental occupancy rates of the property. This property was condemned by the City in September 2023. After this time-period, the property had no tenants. Co-conspirator B, on behalf of ROSENSTEIN, falsely "staged" the property to make it appear that there were tenants on the property during various bank inspections when in fact the property had no tenants at the time.

**COUNT 1**

**Conspiracy to Commit Bank Fraud**

**(PPP Loan Program)**

**[Title 18 U.S.C. § 1349]**

22. Paragraphs 1 and 3-5, 7-12 of this indictment are re-alleged and reincorporated as if fully set forth herein.

23. On or about April 2020 through August 2022, in the District of Arizona, and elsewhere, the defendant, ROSENSTEIN and his fellow Co-conspirators knowingly and intentionally combined, confederated and agreed with each other to commit an ongoing Conspiracy to Commit Bank Fraud as specified in paragraphs 11-12 of the indictment. The co-conspirators, to include ROSENSTEIN, knowingly and intentionally executed, and attempted to execute, a scheme and artifice to: (1) defraud various federally insured financial institutions; and (2) obtain any money, funds, credits, assets, or other property owned by or under the custody or control of such financial institutions, by means of materially false and fraudulent pretenses, representations, or promises, all in violation of Title 18, United States Code, Sections 1344. Various overt acts in furtherance of the conspiracy occurred in the District of Arizona and elsewhere.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 2**

**Conspiracy to Commit Bank Fraud**

**(Phony Rent Roll Scheme)**

**[Title 18 U.S.C. § 1349]**

24. Paragraphs 2, 6, and 13-17 of this indictment are re-alleged and reincorporated as if fully set forth herein.

25. On or about March 2022 through June 2023, in the District of Arizona, and elsewhere, the defendant, ROSENSTEIN and his fellow co-conspirators knowingly and intentionally combined, confederated, and agreed with each other to commit an ongoing Conspiracy to Commit Bank Fraud as specified in paragraphs 13-17 of the indictment. The co-conspirators, to include ROSENSTEIN, knowingly and intentionally executed, and attempted to execute, a scheme and artifice to: (1) defraud various federally insured financial institutions; and (2) obtain any money, funds, credits, assets, or other property owned by or under the custody or control of such financial institutions, by means of materially false and fraudulent pretenses, representations, or promises, all in violation of Title 18, United States Code, Sections 1344. Various overt acts in furtherance of the conspiracy occurred in the District of Arizona and elsewhere.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 3**

**Conspiracy to Commit an Offense Against the United States:**
**False Statement to Influence a Mortgage Lending Business**

**[Title 18 U.S.C. § 371]**

26. Paragraphs 2, 6, and 13-21 of this indictment are re-alleged and incorporated as if fully set forth herein.

27. On or about September 2021 through December 2025, in the District of Arizona, and elsewhere, the defendant, ROSENSTEIN and his fellow Co-conspirators knowingly and intentionally combined, confederated, agreed, and conspired with each other to commit

an offense against the United States, that is, false statement for the purpose of influencing in any way the action of mortgage lending businesses and an FDIC insured financial institution upon and in relation to applications or inspections relating cash-back mortgage refinance loans, in violation of Title 18, U.S.C. § 1014. ROSENSTEIN became a member of the conspiracy knowing its object was to commit false statement to influence a financial institution or mortgage lending business and intended to help accomplish it

28. In furtherance of the conspiracy and to effect the object of the conspiracy, the following overt acts were committed in the District of Arizona and elsewhere:

a. ROSENSTEIN and his Co-conspirators conspired to falsely inflate various capital expenditures relating to the commercial "cash-back" fraudulently obtained loans. Co-conspirator B, on behalf of ROSENSTEIN, created a phony capital expenditure list that reflected total capital expenses for the 4098 E. 29th Street Tucson property as approximately $3.7 million dollars. In reality, capital expenses for this property were approximately $2 million to $2.25 million dollars. The false capital expenditure list for this property was submitted to the lenders with the intent to influence the lenders' decision to obtain the loans. Additionally, false rent rolls reflecting the property had a 100% occupancy rate were also submitted to obtain both cash-back refinance loans for this property. In reality, the truthful rental occupancy rates were between 80% and 92% during the time-period provided in the loan applications for the loans.

b. Co-conspirator B, on behalf of ROSENSTEIN, created a phony capital expenditure list that reflected total capital expenses for 4141 E. 29th Street property as approximately $2.6 million dollars. In reality, capital expenses for this property were approximately $1.2 million dollars. The false capital expenditure list was submitted to the lender, as part of the conspiracy, with the intent to influence the lender's decision to obtain the loan.

c. Co-conspirator B, on behalf of ROSENSTEIN, created a phony capital expenditure list that reflected total capital expenses for 314 E. Benson Street as approximately $1.05 million. In reality, capital expenses for this property were

approximately $250,000 dollars. The false capital expenditure list was submitted to the lender, as part of the conspiracy, with the intent to influence the lender's decision to obtain the loan.

d. Co-conspirator B, on behalf of ROSENSTEIN, created a phony capital expenditure list that reflected total capital expenses for 1025 E. Benson Highway as approximately $2 million. In reality, capital expenses for this property were approximately $200,000 dollars. The false capital expenditure list was submitted to the lender, as part of the conspiracy, with the intent to influence the lender's decision to obtain the fraudulent loan.

e. Key Bank Real Estate Capital and Allegiant Community Asset Service Group conducted inspections on behalf of KeyBank, an FDIC insured financial institution and servicer of the 1025 E. Benson Highway loan referenced in paragraph 17 of the indictment. In connection with this loan and during these inspections on or about January 29, 2024 and December 30, 2025, Co-conspirator B, on behalf of ROSENSTEIN, falsely represented that the property was 99% and 100% occupied, when in fact there were no tenants residing on the premises. Co-conspirator B, on behalf of ROSENSTEIN, "staged" the property with fake tenants to make it appear that the property was occupied when in fact no tenants resided there. These false representations were made with intent to influence the loan servicer's inspections for the property relating to the loan.

All in violation of Title 18, U.S.C., Section 371.

## FORFEITURE ALLEGATION

Upon conviction of Counts One through Three of this Indictment, the defendant, Rodney Rosenstein, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to the violations, and any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

If any of the property described above, as a result of any act or omission of the defendant: a) cannot be located upon the exercise of due diligence; b) has been transferred or sold to, or deposited with, a third party; c)has been placed beyond the jurisdiction of the court; d) has been substantially diminished in value; or e) has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property, including, but not limited to, all property, both real and personal, owned by the defendant.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/S/
FOREPERSON OF THE GRAND JURY
Dated: August 12, 2026

REDACTED FOR
PUBLIC DISCLOSURE

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

/S/
JONATHAN B. GRANOFF
Assistant U.S. Attorney